Filed 9/26/24  P. v. Villavicencio CA2/7

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>LUIS VILLAVICENCIO,<br><br>    Defendant and Appellant. | B330470<br><br>(Los Angeles County<br>Super. Ct. No. NA119717) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Chet L. Taylor, Judge.  Affirmed.

Ellen M. Matsumoto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran, Supervising Deputy Attorney General, and Charles Chung, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

A jury convicted Luis Villavicencio on one count of misdemeanor assault and one count of felony child abuse under circumstances or conditions likely to produce great bodily harm or death. Villavicencio waived his right to a jury trial on the allegation under California Rules of Court, rule 4.421(a)(2),[1] he was armed with or used a weapon at the time of the commission of the crime, and the trial court found the allegation true.

The trial court sentenced Villavicencio to six months in county jail on the assault conviction. The court imposed the middle term of four years on the child abuse conviction, suspended execution of the sentence, and placed Villavicencio on probation for four years. Villavicencio argues the trial court erred in finding he was armed with or used a weapon, within the meaning of rule 4.421(a)(2). We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

### A. *Villavicencio Attacks His Stepson*

When Kevin R. was 17 years old, he lived in an apartment with his mother, his brother, his friend Jobany, and his stepfather Villavicencio. One afternoon in May 2022, Kevin was in his room with his girlfriend Josselyn. Jobany, who was in the living room, heard Villavicencio banging on the front door and scratching it with a knife. Jobany heard Villavicencio swear and say, "I'm gonna kill you." Jobany told Kevin not to go outside because Villavicencio was "out there acting crazy" and had a

---

[1] Citations to rules are to the California Rules of Court.

knife.  Kevin opened the door to the apartment and saw Villavicencio had red eyes, "was on the floor fake crying," and was "scratching the door with a knife."  Kevin thought Villavicencio was under the influence of drugs.  Villavicencio "tried to rush" Kevin, and Kevin "quickly closed the door."  From inside the apartment, Kevin heard Villavicencio yell, threaten Kevin's family, and say he was "going to kill [them] all."

Because Kevin needed to take Josselyn home and Villavicencio was blocking the front door, Kevin decided to climb out his bedroom window.  When Kevin had one leg inside the window and one leg outside, Villavicencio came over and started punching Kevin in the face.  Kevin tried to protect himself by holding his arms in front of his head.

Jobany came outside and saw Kevin and Villavicencio fighting on the ground under the window.  Villavicencio swung a knife toward Kevin.  Jobany grabbed Villavicencio and "pulled him down to the ground."  Kevin and Jobany hit Villavicencio and tried to take the knife away from him, including by hitting his hand with a broom.  Eventually Villavicencio let go of the knife, and Jobany put it in his pocket.  Villavicencio continued to try to hit Kevin.  Jobany told Villavicencio and Kevin to calm down.  Jobany put his hand on Villavicencio's chest and told Kevin to take Josselyn home.

Kevin and Josselyn left.  Villavicencio was dazed and unable to get up.  Jobany woke up Kevin's mother, who had been sleeping, and told her what happened.  When Kevin's mother saw Villavicencio, she told Jobany to call the 911 emergency operator, which he did.  Paramedics arrived, put Villavicencio on a stretcher, and took him to the hospital.

Kevin had a swollen lip and a half-inch laceration on his hand. Jobany gave Villavicencio's knife, a small pocketknife with a one-inch blade, to the police.

B.   *The Jury Convicts Villavicencio*

The People charged Villavicencio with one count of assault with a deadly weapon (Pen. Code, § 245, subd. (a)(1))[2] and one count of child abuse under circumstances or conditions likely to produce great bodily harm or death (§ 273a, subd. (a)). The People alleged as an aggravating factor for both counts that Villavicencio was armed with or used a weapon at the time of the commission of the crime, within the meaning of rule 4.421(a)(2).

After the People presented their case to the jury, Villavicencio testified on his own behalf. He stated the fight began when Kevin yelled "I'm attacked," and Kevin, Jobany, Kevin's two siblings, and a friend attacked him. Villavicencio testified he was hit with a baseball bat and lost consciousness. Villavicencio also testified that he did not attack anyone and that he was not a violent person. He denied the knife was his.

The People called Kevin's mother Yanira R. as a rebuttal witness. She testified that Villavicencio was her husband, that the knife Jobany gave to police was Villavicencio's, and that Villavicencio "always carried a knife in his pocket." She also said that Villavicencio was a violent person and that for the previous month Villavicencio had been acting strange and not sleeping or eating.

Yanira also stated that, on the afternoon of the fight, Josselyn and Jobany woke her up and told her Villavicencio was

---

[2]    Statutory references are to the Penal Code.

"hitting Kevin when he was going out the window." Yanira said that she saw Villavicencio coming toward the house, but that, when he saw her, he banged his face on the wall and fell and started banging his head against the ground. She stated that Jobany got a pillow and that he and Yanira put it under Villavicencio's head. She added that Kevin was home that day, but that Kevin's two brothers were not.

The jury found Villavicencio not guilty of assault with a deadly weapon, but guilty of the lesser included offense of misdemeanor assault. The jury found Villavicencio guilty of child abuse as charged.

C.  *The Trial Court Sentences Villavicencio*

Villavicencio waived his right to a jury trial on the allegation he was armed with or used a weapon, within the meaning of rule 4.421(a)(2). Counsel for Villavicencio argued that, because the jury found Villavicencio not guilty of assault with a deadly weapon, the jury "didn't believe a weapon was used" and that "the evidence did not show a weapon was used." The prosecutor argued that Villavicencio had a knife, that Jobany fought with Villavicencio to take away the knife, that Kevin suffered minor injuries from the knife, and that Yanira verified the knife was his. The court found the aggravating factor true.

Counsel for Villavicencio asked the court to sentence Villavicencio to the lower term on the felony child abuse conviction. He argued that Villavicencio had no criminal record, that the jury acquitted him of assault with a deadly weapon, that he lost the fight "rather badly and ended up in the hospital," and that no one else was seriously injured. The prosecutor asked the court to sentence Villavicencio to six months on the misdemeanor

5

assault conviction and to the upper term of six years on the felony child abuse conviction, to suspend execution of the six-year sentence, and to put Villavicencio on probation for four years. The prosecutor stated the two convictions did "not merge" because they were based on "two separate incidents."

On the assault conviction, count 1, the trial court sentenced Villavicencio to 180 days in county jail, with "credit for 293 plus 292 for a total of 595 days." On the conviction for child abuse, count 2, the court imposed the middle term of four years, suspended execution of the sentence, and placed Villavicencio on probation for four years. The court stated: "I don't think the [upper] term is needed in this matter, in light of the fact that Mr. Villavicencio has never been arrested before, doesn't have any prior convictions." The court also stated: "It's not your normal or typical [section] 273a child abuse case in that the victim in this matter was 17 years old . . . . The court does note [Villavicencio] was beat down . . . . I just don't think this is a state prison case." Villavicencio timely appealed.

## DISCUSSION

A.     *Applicable Law and Standard of Review*

Effective January 1, 2022, the Legislature amended section 1170 to make the middle term the presumptive prison sentence for a defendant convicted of a felony. (§ 1170, subd. (b)(1), (2); see *People v. Fuentes* (2023) 87 Cal.App.5th 1286, 1303; *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038.) Section 1170, subdivision (b), states a court may impose the upper term "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment

exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2); see *People v. Lynch* (2024) 16 Cal.5th 730, 794.) One of the aggravating circumstances a court may consider is whether the "defendant was armed with or used a weapon at the time of the commission of the crime." (Rule 4.421(a)(2).)

The requirement that the People prove the aggravating circumstances beyond a reasonable doubt does not apply, however, where the court selects the middle term. "In selecting between the middle and lower terms of imprisonment, the sentencing judge may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision . . . whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial." (Rule 4.420.) The court must impose the lower term if it finds that the defendant has experienced certain trauma, is a youthful offender, or is the victim of intimate partner violence and that one or more of those circumstances contributed to the offense, unless the court finds that "aggravating circumstances outweigh the mitigating circumstances" and that "imposition of the lower term would be contrary to the interests of justice."[3] (§ 1170, subd. (b)(6); see rule 4.420(e).) The court may impose the lower term even if there is no evidence of trauma, youth, or intimate partner violence. (§ 1170, subd. (b)(7); rule 4.420(f).)

---

[3] Villavicencio does not contend any of the mitigating circumstances in section 1170, subdivision (b)(6), applies here.

7

We review the trial court's sentencing decisions for abuse of discretion.  (*People v. Hilburn* (2023) 93 Cal.App.5th 189, 205-206.)  "That 'discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an "individualized consideration of the offense, the offender, and the public interest."'"  (*Ibid.*; see *People v. Sandoval* (2007) 41 Cal.4th 825, 847.)  A court abuses its discretion "'if it relies upon circumstances that are not relevant to the decision or that otherwise constitute an improper basis for decision.'"  (*Hilburn*, at p. 206; see *Sandoval*, at p. 847.)

 B. *The Trial Court Did Not Abuse Its Discretion in Sentencing Villavicencio*

Villavicencio does not challenge his conviction on count 1 for assault; he challenges only his sentence on count 2 for child abuse under circumstances or conditions likely to produce great bodily harm or death.  He argues that the trial court erred in finding he was armed with or used a weapon, within the meaning of rule 4.421(a)(2), and that we should direct the trial court to resentence him on count 2 to the lower term of two years.

The People argue Villavicencio forfeited his argument by failing to raise it in the trial court.  (See *People v. Anderson* (2020) 9 Cal.5th 946, 961 ["'"complaints about the manner in which the trial court exercises its sentencing discretion and articulates its supporting reasons cannot be raised for the first time on appeal"'"]; *People v. Scott* (1994) 9 Cal.4th 331, 356 [same].)  While Villavicencio did not make precisely the same argument in the trial court that he makes on appeal, he did ask the court to sentence him to the lower term and to find the

weapon allegation not true because the jury found him not guilty of assault with a deadly weapon. Therefore, he preserved the issue for appeal.

1. *The Trial Court Did Not Find the Aggravating Factor True on Count 1*

Villavicencio asks us to strike the trial court's finding that he was armed with or used a weapon under rule 4.421(a)(2) at the time he committed misdemeanor assault because a "finding of aggravating factors is only relevant to a felony sentence." Villavicencio is correct rule 4.421(a)(2) applies only to felony sentencing. (See rule 4.403 ["These rules apply only to criminal cases in which the defendant is convicted of one or more offenses punishable as a felony"].) But the record does not support his assertions that the prosecutor "requested that the aggravating factors be found true for both counts" and that the "trial court found the aggravating factors as to both counts true."

The People charged Villavicencio with two felonies and alleged he was armed with or used a weapon when he committed both crimes. But once the jury convicted Villavicencio on count 1 of the lesser included offense of misdemeanor assault, the aggravating factor became irrelevant to that conviction. At sentencing the prosecutor reminded the court that, although the jury did not convict Villavicencio of a felony on count 1, the jury did convict him of felony child abuse on count 2. The prosecutor stated, "I'd ask the court to find the aggravating factor true. I'd note it is alleged not only as to count 1, but also as to count 2, the child abuse, of which the jury did find him guilty." The court ruled, "The court does find the aggravating factor of California Rules of Court[, rule] 4.421(a) to be true." Villavicencio does not

point to anything in the record indicating that the court found the aggravating factor true for the misdemeanor conviction or that the court considered that factor in sentencing him on his misdemeanor conviction to 180 days in county jail. (See *People v. Giordano* (2007) 42 Cal.4th 644, 666 ["we presume that a judgment or order of the trial court is correct, "'[a]ll intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown""]; *People v. Selivanov* (2016) 5 Cal.App.5th 726, 795 ["'The very settled rule of appellate review is a trial court's order/judgment is presumed to be correct, error is never presumed, and the appealing party must affirmatively demonstrate error on the face of the record.'"].)

### 2. *The Trial Court Did Not Err in Considering the Aggravating Factor in Sentencing Villavicencio on Count 2*

Villavicencio argues substantial evidence did not support the trial court's finding beyond a reasonable doubt he was armed with or used a weapon when he committed the crime of child abuse. His argument fails for several reasons.

First, as discussed, although the court may impose the upper term only where the trier of fact finds one or more aggravating circumstances true beyond a reasonable doubt (§ 1170, subd. (b)(2)), that requirement does not apply when the court selects the middle term. (See rule 4.420 [in selecting between the middle and lower terms, the court "may consider circumstances in aggravation or mitigation, and any other factor reasonably related to the sentencing decision," whether or not the factors have been found true]; see also *People v. Bautista-*

10

*Castanon* (2023) 89 Cal.App.5th 922, 929 [section 1170, subdivision (b)(2), "is directed by its terms solely to the prerequisites for imposing the *upper term*"].)  Because the court imposed the middle term, it did not need to find beyond a reasonable doubt Villavicencio was armed with or used a weapon.

Second, the trial court did not abuse its discretion in finding Villavicencio was armed with or used a weapon, considering that finding as an aggravating factor, or selecting the middle term.  There was substantial evidence Villavicencio was armed with and used a knife.  Kevin and Jobany testified Villavicencio scratched on the front door with a knife, swung the knife at Kevin, and would not drop it.  Kevin had a half-inch laceration on his hand.  Jobany retrieved the knife and gave it to the police, and Yanira identified it as Villavicencio's.

Villavicencio argues there was no evidence he was armed with or used a knife when he committed the crime of child abuse (count 2, the felony conviction) as opposed to when he committed the crime of simple assault (count 1, the misdemeanor conviction).  He contends the prosecutor argued that Villavicencio committed child abuse by punching Kevin in the face as he climbed out the window and that he committed assault by swinging a knife at Kevin once Kevin was on the ground.  Villavicencio argues there was no evidence he had the knife "while he was punching Kevin . . . as he straddled the window."

A "person is 'armed,' under [former] rule 421(a)(2), if he carries the weapon or *has it available for use.*"[4]  (*People v. Searle* (1989) 213 Cal.App.3d 1091, 1099; see *ibid.* [defendant was

---

[4]     Former rule 421 was renumbered as rule 4.421 effective January 1, 2001.

armed with a gun when he sold drugs from a car that had a loaded gun in it]; *People v. Garcia* (1986) 183 Cal.App.3d 335, 350 ["fact that a burglar may temporarily divest himself of a weapon, leaving it ready to hand, does not make him any less 'armed'" under former rule 421]; see also *People v. Bland* (1995) 10 Cal.4th 991, 1006 [under section 12022, a defendant is "'armed with a firearm in the commission'" of a felony if the defendant has "a firearm available for offensive or defensive use"]; *People v. White* (2016) 243 Cal.App.4th 1354, 1362 ["a defendant is armed with a weapon even though it is not carried on his person, when he is aware it is hidden in a place readily accessible to him"]; *People v. Superior Court* (*Martinez*) (2014) 225 Cal.App.4th 979, 990, 992-993 [defendant was "'armed with a firearm' within the meaning of sections 667, subdivision (e)(2)(C)(iii) and 1170.12, subdivision (c)(2)(C)(iii)" where "the defendant had the firearm available for immediate offensive or defensive use"].)

There was ample evidence Villavicencio had the knife available for use when he punched Kevin as Kevin climbed out the window. Villavicencio had and was using the knife at the front door, shortly before he hit Kevin. Villavicencio swung the knife at Kevin shortly after he hit him. From this evidence the trial court could reasonably infer Villavicencio had the knife in his pocket—or nearby and available for use—when he hit Kevin by the window.

Moreover, even if Villavicencio was not armed at the time he committed child abuse (punching Kevin as he climbed out the window), the trial court could rely on the evidence Villavicencio was armed at the time he committed simple assault (fighting with Kevin and Jobany on the ground) because the two crimes, which occurred at the same location within a short time period,

12

were "'so closely connected in time and place as to comprise a single criminal transaction.'"  (*People v. Searle, supra*, 213 Cal.App.3d at p. 1098, italics omitted; see *People v. Calhoun* (2007) 40 Cal.4th 398, 408 [trial court could consider the aggravating factor of multiple victims under rule 4.421 as a basis for imposing the upper term, even though each victim was listed in a separate count, because a "single act of violence" caused multiple people to be injured or killed]; *People v. Valenzuela* (1995) 40 Cal.App.4th 358, 363 [where "'multiple crimes are so closely connected in time and place as to comprise a single criminal transaction a sentencing court may impose the aggravated term for one of the crimes based upon a finding of multiple victims involved in the entire criminal transaction'"]; *People v. Bradford* (1995) 38 Cal.App.4th 1733, 1739 [in imposing the upper term, the trial court did not err in treating the defendant's possession of loaded guns in a compound where he cultivated marijuana as an aggravating factor under former rule 421(a)(2) because the possession of the weapons was transactionally related to the crime of cultivation of marijuana].)[5]

---

[5]     Nor did the fact the jury acquitted Villavicencio of assault with a deadly weapon preclude the trial court from finding he was armed with or used a weapon within the meaning of rule 4.421(a)(2).  (See *People v. Towne* (2008) 44 Cal.4th 63, 71 ["because facts considered by the court in selecting the appropriate sentence within the available sentencing range need not be proved beyond a reasonable doubt, a trial court, in this setting, is not prohibited from considering evidence underlying charges of which a defendant has been acquitted"]; see also *People v. Santamaria* (1994) 8 Cal.4th 903, 922 ["the jury's not true finding on the enhancement allegation does not mean

13

**DISPOSITION**

The judgment is affirmed.

SEGAL, Acting P. J.

We concur:

FEUER, J.

STONE, J.

---

defendant did not use the knife, only that there was a reasonable doubt that he did"].)

14